IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. LIEBIG** : | CIVIL ACTION |
| : | |
| v. : | NO. 22-4427 |
| : | |
| **MTD PRODUCTS INC, MTD LLC, YARD** : | |
| **MACHINES BY MTD, ROOSEVELT MALL** : | |
| **FLEA MARKET, THE ROOSEVELT** : | |
| **MALL OUTDOOR FLEA MARKET,** : | |
| **PHILADELPHIA FLEA MARKETS** : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                                                                   **May 25, 2023**

A defendant can get out of state court and into federal court when there is diversity jurisdiction. Not all plaintiffs view this as a welcome development. So a clever plaintiff might try to block removal to federal court by naming an extra defendant who destroys diversity. But it doesn't work if there is no legitimate basis to name that extra defendant — that's called fraudulent joinder.

In this case, John Liebig says he was injured when the rim of a defective snow thrower purchased at Phila Flea Markets burst. Mr. Liebig sued not only the out-of-state manufacturer of the snow thrower, but also local Phila Flea Markets — maybe to hold venue in state court. Indeed, with those defendants, the case would have to go back to state court because both Mr. Liebig and Phila Flea Markets are citizens of Pennsylvania. That is, unless Phila Flea Markets was fraudulently joined. Mr. Liebig's justification for suing Phila Flea Markets is that a flea market has a duty to research everything sold by its vendors and be aware if any given snow thrower had been recalled — as this one had. We decline to impose such a sweeping duty on flea markets. As such, we hold that Phila Flea Markets was fraudulently joined, and deny Mr. Liebig's motion to remand to state court.

I.      **Factual allegations**

According to the complaint, Mr. Liebig was inflating the tires on a defective MTD snow thrower on or about January 31, 2021, when the rim "unexpectedly shattered, burst and exploded." DI 1 Ex. A ¶¶ 8-10. Mr. Liebig's resulting injuries included severe hand and groin trauma, multiple fractures, diminished or inability to ambulate, loss of life's pleasures, and pain and suffering, among others. DI 1 Ex. A ¶ 11.

Mr. Liebig received the snow thrower as a gift from his father who purchased it at Phila Flea Markets approximately two years before the incident. DI Ex. A. at ¶¶ 7-9.[1] Mr. Liebig alleges that Phila Flea Markets "marketed and facilitated the sale" of the defective product by providing a forum at which a flea market vendor could sell the product. DI 15-1 at 3.[2]

The United States Consumer Product Safety Commission had previously issued a recall covering the snow thrower on October 5, 2006. *See* DI 12 Ex. B. The recall notice warned that if the snow thrower's tires are over-inflated, its rims can burst causing lacerations and fractures.

---

[1] Phila Flea Markets disputes whether Mr. Liebig properly pled that his father purchased the snow thrower at Phila Flea Markets. *See* DI 6-1 at 6-7. Mr. Liebig's complaint says the snow thrower was given to him by his father who purchased the snow thrower and that "upon information and belief, all defendants above named sold, distributed and/or otherwise made the snow thrower involved in this accident available to the public." DI 1 Ex. A ¶¶ 7-9. Phila Flea Markets argues this does not establish that Mr. Liebig's father obtained the snow thrower at the flea market. DI 6 at 7. It further argues such information can be obtained only through a statement from Mr. Liebig's father who is now deceased and so any such statement is barred by Pennsylvania law. *Id.* We will assume for the purposes of this opinion that we may credit the allegation that Mr. Liebig's father purchased the snow thrower at the flea market.

[2] While the complaint broadly states that "upon information and belief, all defendants above named sold, distributed and/or otherwise made the snow thrower involved in this accident available to the public," *see* DI 1 Ex. A ¶ 7, Mr. Liebig's motion to remand and the oral argument held on April 18, 2023, made clear he alleges that Phila Flea Markets failed to properly inspect or oversee the sales of flea-market vendors, not that Phila Flea Markets itself sold the snow thrower.

*Id*. It further stated that "[i]t is illegal to resell or attempt to resell a recalled consumer product." *Id*.

## II.     Mr. Liebig's motion for remand

Mr. Liebig filed this action on September 19, 2022, in the Court of Common Pleas of Philadelphia County.[3]  DI 1 Ex. A.  On November 4, 2022, Defendants MTD Products Inc and MTD LLC (collectively "MTD") filed a notice of removal, asserting that we have jurisdiction over the action pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332.  DI 1.  Mr. Liebig filed a motion for remand on December 5, 2022, arguing removal was improper because the action lacks complete diversity of citizenship.  DI 15 ¶ 12.

Defendants[4] argue complete diversity of citizenship exists because Mr. Liebig is a citizen of Pennsylvania, the MTD defendants are citizens of Delaware and Ohio, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  DI 1 ¶¶ 8-10, 21.  They further argue that the alleged Pennsylvania citizenship of Phila Flea Markets[5] does not destroy diversity of citizenship because Phila Flea Markets was fraudulently joined to this lawsuit as there is no "colorable" claim asserted against the flea market.  DI 1 ¶¶ 25-28; DI 17 at 7-12.

---

[3] The original complaint listed a number of defendants including Yard Machines by MTD, MTD, LLC, MTD Products, Inc., Roosevelt Mall Flea Market, The Roosevelt Mall Outdoor Flea Market, Philadelphia Flea Markets, John/Jane Doe (1-10), ABC Corporation (1-10), and DEF Company (1-10). DI 1 Ex. A.  In the notice of removal, defendants state that some of the original defendants were identified incorrectly or are not extant legal entities.  The proper defendants are MTD Products Inc, MTD LLC, and Phila Flea Markets, LLC.  DI 1 ¶ 3-6. Plaintiffs do not appear to dispute this.  *See* DI 15-1 at 2.

[4] Phila Flea Markets did not join the initial notice of removal, DI 1, but did join the opposition to the motion to remand.  DI 17.

[5] The citizenship of Phila Flea Markets, LLC is determined by the citizenship of each of its members*. See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419-20 (3d Cir. 2010). While the complaint does not plead the citizenship of Phila Flea Markets, LLC's members, *see* DI 1, Ex. A ¶ 6, everyone appears to agree that Phila Flea Markets is a citizen of Pennsylvania.

The complaint includes thirteen different ways in which all defendants, including Phila Flea Markets, are negligent. DI 1 Ex. A ¶¶ 14. At oral argument, Mr. Liebig's attorney clarified the key assertions against the flea market are: (1) "providing Plaintiff with a defective snow thrower including it components"; (2) "failure to notify Plaintiff of the defective and/or unsafe operating condition of the snow thrower"; and (3) "failure to realize the snow thrower was the subject of a recall, but nonetheless facilitating in its distribution." *Id.*

Defendants argue the negligence allegations against Phila Flea Markets are not colorable because Pennsylvania law[6] does not impose the same legal duties onto Phila Flea Markets as on a product's manufacturer or seller. DI 17 at 11. They argue imposing such duties would "sound the death knell for flea markets across Pennsylvania." *Id.* at 7.

Mr. Liebig argues that Phila Flea Markets owed a duty because it "marketed and facilitated the sale" of the product. DI 15-1 at 3. He further argues that the flea market has some duty to oversee its vendors and prevent illegal sales, particularly when a vendor is selling a potentially dangerous piece of machinery. And Phila Flea Markets breached this purported duty by failing to realize the snow thrower was the subject of a recall and nevertheless facilitating its distribution. DI 12 at 8.

For the reasons set forth below, we conclude that Phila Flea Markets has been fraudulently joined and will deny Mr. Liebig's motion to remand.

### III. Standard of Review

A defendant may remove an action filed in state court if the federal court has original jurisdiction over the action. *See In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006); 28 U.S.C.

---

[6] Neither party disputes that it is appropriate to apply Pennsylvania substantive law. DI 12; DI 17.

§ 1441(a).  When defendants assert original jurisdiction pursuant to § 1332, complete diversity must exist between parties and the amount in controversy must exceed $75,000.  *In re Briscoe*, 448 at 215; § 1332(a).

Fraudulent joinder is an exception to this general requirement.  *In re Briscoe*, 448 F.3d at 215-16.  A defendant may remove the action to federal court if the diversity-destroying defendant was "'fraudulently' named or joined solely to defeat diversity jurisdiction."  *Id.*

Joinder is fraudulent when "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment."  *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).  If there is "even a possibility" that the complaint states a cause of action against a resident defendant, the federal court must find joinder was proper and remand the case.  *Id.* (quoting *Boyer*, 913 F.2d at 111).  In order to establish fraudulent joinder, the claim must be "wholly insubstantial and frivolous."  *Id.* at 852.

The removing party carries a "heavy burden of persuasion" to show fraudulent joinder.  *Id* at 851 (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987).  This burden is greater than that required to sustain a motion to dismiss.  *In re Briscoe*, 448 F.3d at 218.

**IV.     Analysis**

Negligence requires showing that "the defendant had a duty 'to confirm to a certain standard of conduct;' that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage."  *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) (quoting *Morena v. S. Hills Health Sys.*, 462 A.2d 684, 642 n.5 (Pa. 1983).

5

The defendant's duty of care is central here. *Id.* Mr. Liebig argues that Phila Flea Markets had a duty to oversee the items sold at the flea market. His argument — viewed in the most favorable light we can think of — seems to be that if an item for sale is understood to be potentially dangerous, then the flea market has a duty to check whether the item has been subject to a safety recall. However, Mr. Liebig cites no authority, and the Court found none, that imposes such a duty on flea markets or analogous entities that merely provide space for third parties to sell ordinary household items to each other.

Mr. Liebig relies on cases that address strict liability or negligence claims against manufacturers, distributors, and sellers. *See Berrier v. Simplicity Mfg.*, 563 F.3d 38 (3d Cir. 2009) (analyzing strict liability and negligence claims against a manufacturer); *Phillips*, 841 A.2d at 1003 (analyzing claims, including negligence and strict liability, against manufacturers and distributors); *Tincher v. Omega Flex, Inc.,* 104 A.3d 328, 336 (Pa. 2014) (analyzing strict liability claims against a company that "manufactured and sold" allegedly defective tubing); *see also Thorpe v. Bollinger Sports, LLC*, No. 14–04520, 2015 WL 5299614, at *5-6 (E.D. Pa. Sept. 9, 2015) (finding previous product designer did not owe a duty to consumers in negligence, in part, because defendants generally must be manufacturers, distributors, or sellers of products in order to sustain negligence claims). But those cases do not get Mr. Liebig where wants to go because he acknowledges that Phila Flea Markets is not a manufacturer, distributor, or seller of the snow thrower — it's just a flea market where the snow thrower changed hands.

Plaintiff also points to *Tincher* to argue that Pennsylvania law has long imposed a duty in negligence on those who "market" defective products. Mr. Liebig makes much of the *Tincher* court's observation that "the question of whether those who make or market products have duties in strict liability (in addition to negligence) has been answered in the affirmative by the 1966

6

decision in *Webb*."[7] *Tincher*, 104 A.3d at 384. This argument does not work either. First, although *Tincher* has a thorough discussion of products liability law in Pennsylvania, its ultimate holding focuses on strict liability rather than negligence. 104 A.3d at 341 n.2. Second, the claims in *Tincher* are against a manufacturer — not a flea market. *Id.* at 336. Plaintiff provides no authority that the word "market" creates a separate duty in negligence on flea markets — which do not sell, distribute, or manufacture products — to ensure no defective products are sold there.

Inversely, the Pennsylvania Supreme Court has declined to impose liability on an entity that merely facilitated the sale of products between others. *Musser v. Vilsmeier Auction Co.*, 562 A.2d 279, 369 (Pa. 1989). In *Musser*, an individual injured by an allegedly defective tractor sold at an auction brought negligence, strict liability, and breach of warranty claims against the auction company. *Id.* The Pennsylvania Supreme Court affirmed the Superior Court's order granting summary judgment for the auction company. *Id.* at 376.

In granting summary judgment on the negligence claim, the underlying Court of Common Pleas opinion stated that:

> No statutory or decisional law exists in the Commonwealth of Pennsylvania which places upon an auctione[e]r the duty to in any way inspect or service machinery to be auctioned. Where no legal duty exists there can be no negligence, as duty is an essential element of a negligence cause of action.

*Musser v. Vilsmeier Auction Co.,* No. 6517, March Term, 1986, slip op. at *3-4 (Phila. Cty. Ct. Com. Pl. 1987), *aff'd*, 544 A.2d 1048 (Pa. Super. Ct. 1988). Nor was the auction company a "seller" in the context of strict liability.[8] *Musser*, 562 A.2d at 376. Rather, it was only the

---

[7] In *Webb v. Zern,* 220 A.2d 853, 854 (Pa. 1966), the Supreme Court of Pennsylvania also analyzed strict liability and the lawsuit was brought against a distributor, a brewer who filled an allegedly defective keg, and the manufacturer of the keg.

[8] The Pennsylvania Supreme Court opinion focused exclusively on the question of whether the auction company could be held strictly liable. *Musser*, 562 A.2d at 370.

"means of marketing" and "merely provided a market as the agent of the seller." *Id.* at 373.  As such, the auction company was "not equipped to pass upon the quality of the myriad of products he is called upon to auction and with which is contact is impromptu." *Id.*

*Musser* was a sound decision.  And like in *Musser*, Phila Flea Markets merely facilitated the sale of the snow thrower but did not itself sell the allegedly defective product.  As such, Pennsylvania law does not impose a duty on the flea market to inspect machinery sold there and ensure it is not subject to a recall.

It bears mention that snow throwers are ordinary household products that are typically legal to sell.  The duty plaintiff asks us to find colorable requires more than a cursory check of whether illegal items are being clearly and openly sold.  Plaintiff would require flea markets to inspect even seemingly legal, safe, and ordinary products to ensure they are not subject to a recall or are otherwise dangerous.  But there is simply no basis for this in Pennsylvania law.

Fraudulent joinder may be established in products liability cases when, as here, the defendant did not manufacture or sell the defective product.  In *Williams v. John Middleton Co.*, No. 23-1158, WL 3393413, at *1-2 (E.D. Pa. May 11, 2023), an individual was allegedly injured by a defective cigar/cigarillo and lighter.  He brought negligence, strict liability, and breach of warranty claims against several entities, including the real estate holding company that leased property to a corporation that managed the store at which the products were sold.  *Id.*  The court there found the real estate company fraudulently joined because the record did not show it "sold, manufactured, or distributed" the products.  *Id.* at *3.  Further, plaintiff could not cite any law that suggested "there is a legal basis to assert a products liability claim against an entity that neither sold nor manufactured an allegedly defective product." *Id.*; *see also Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 667-71 (E.D. Pa. 2012) (finding Costco was fraudulently joined

8

because the complaint did not establish the retailer had reason to know a product was dangerous and therefore had no duty to inspect, remove, or warn about the product); *Reeser v. NGK Metals Corp.*, 247 F. Supp. 2d 626, 630-31 (E.D. Pa. 2003) (finding an engineering consulting firm fraudulently joined in a case involving emission exposure when the firm "owed no duty to plaintiffs who simply resided in the neighborhood of the Reading plant").

There is no "colorable" negligence claim against Phila Flea Markets; it has been fraudulently joined to this lawsuit.[9]

## V.     Conclusion

We hold that Mr. Liebig has not stated a colorable negligence claim against Phila Flea Markets and that it has been fraudulently joined. Therefore, we deny Mr. Liebig's motion to remand (DI 15).

---

[9] Mr. Liebig also argues that removal is improper because defendants violated the forum state defendant rule, DI 15-1 at 3, and the rule of unanimity, DI 15-1 at 5-6. However, these rules apply to defendants that have been "properly joined and served." § 1441(b)(2); § 1446(b)(2)(A). Because we find that Phila Flea Markets has been fraudulently joined, Phila Flea Markets alleged Pennsylvania citizenship and lack of consent is not a bar to removal. *See also Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) (noting that the unanimity rule can be disregarded when a defendant has been fraudulently joined); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153 (3d Cir. 2018) (noting the "properly joined and served" statutory language in the in-state defendant rule was added specifically to address fraudulent joinder).