IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN R. LIEBIG | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-4427 |
| | : | |
| MTD PRODUCTS INC, MTD LLC, YARD MACHINES BY MTD, ROOSEVELT MALL FLEA MARKET, THE ROOSEVELT MALL OUTDOOR FLEA MARKET | : | |

# MEMORANDUM

**MURPHY, J.**                                                                                                                     August 25, 2023

A recalled snow thrower allegedly injured John Liebig. He now seeks compensation from the snow thrower's manufacturer.[1] Among other things, Mr. Liebig argues that once the manufacturer learned that the snow thrower was dangerous, it should have attempted to track him down and warn him that the tires' rims could burst.

Pennsylvania law does not accord. While Pennsylvania recognizes a narrow post-sale duty to warn, that has been only for unusual products sold in small and distinct markets — like helicopters. It makes sense, because in those circumstances, manufacturers can find downstream buyers and issue warnings.

---

[1] The complaint does not precisely describe the role each defendant played in selling, manufacturing, or distributing the snow thrower, instead alleging that all defendants "sold, distributed and/or otherwise made the snow thrower involved in this accident available to the public." DI 1 Ex. A ¶ 7. However, subsequent briefing and the hearing held on April 18, 2023 made it clear that Mr. Liebig alleges that defendants MTD Products Inc and MTD LLC (collectively, "MTD") designed and manufactured the snow thrower. Mr. Liebig notes that MTD is the "designer and manufacturer" of the snow thrower in his opposition to MTD's motion to dismiss. DI 13 at 5. According to MTD, it is "implicit" in the complaint that MTD "designed, manufactured, and distributed" the snow thrower. DI 7 at 2.

This situation is quite different. The snow thrower at issue is a mass-produced, ordinary household good. Moreover, it changed hands multiple times before Mr. Liebig acquired it: he received it as a gift from his father, who, in turn, purchased it from an unknown seller at a flea market.[2] Under these circumstances, we decline to impose liability on the manufacturer for failing to seek out Mr. Liebig and warn him about the snow thrower.

We therefore grant the manufacturer defendants' motion to dismiss based on post-sale duties. The remainder of Mr. Liebig's claims, which were not challenged in the motion to dismiss, will continue on.

I. **Factual Allegations**

We discussed some of the allegations in this case in an earlier opinion, but will briefly recapitulate. *See* DI 26. According to the complaint, Mr. Liebig was inflating the tires on a defective MTD snow thrower on or about January 31, 2021, when the rim "unexpectedly shattered, burst and exploded." DI 1 Ex. A ¶¶ 8-10. Mr. Liebig's resulting injuries included severe hand and groin trauma, multiple fractures, diminished or inability to ambulate, loss of life's pleasures, and pain and suffering, among others. DI 1 Ex. A ¶ 11. Mr. Liebig had received the snow thrower as a gift from his father who had purchased it at Phila Flea Markets approximately two years before the incident. DI Ex. A. ¶¶ 7-9.

---

[2] Former defendant Phila Flea Markets disputed whether Mr. Liebig properly pled that his father purchased the snow thrower at Phila Flea Markets. *See* DI 6-1 at 6-7. Mr. Liebig's complaint says the snow thrower was given to him by his father who purchased the snow thrower and that "upon information and belief, all defendants above named sold, distributed and/or otherwise made the snow thrower involved in this accident available to the public." DI 1 Ex. A ¶¶ 7-9. Phila Flea Markets argued that this does not establish that Mr. Liebig's father obtained the snow thrower at the flea market. DI 6 at 7. It further argues such information can be obtained only through a statement from Mr. Liebig's father, who is now deceased, and so any such statement is barred by Pennsylvania law. *Id.* For this opinion, we credit the allegation that Mr. Liebig's father purchased the snow thrower at the flea market.

When Mr. Liebig received the snow thrower, it had a "lateral (hidden) defect" that caused its rims to burst when the tires were properly inflated. DI 1 Ex. A ¶¶ 8-10. In that way, the snow thrower was said to be unsafe "as designed and sold." DI 1 Ex. A ¶ 24. The United States Consumer Product Safety Commission issued a recall covering the snow thrower on October 5, 2006. *See* DI 14 Ex. A.[3] The recall notice warned that if the snow thrower's tires are over-inflated, its rims can burst causing lacerations and fractures. *Id*. It also characterized the relevant number of snow thrower units as "[a]bout 130,000." *Id.*

---

[3] Generally, courts may only consider "the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record" in deciding a motion to dismiss. *Pension Benefit Guar. Corp., v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, courts may also consider a "document integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)), or "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Mr. Liebig did not attach the United States Consumer Product Safety Commission recall of the MTD snow thrower to his complaint. *See* DI 1 Ex. A. This recall notice includes the fact that there were "[a]bout 130,000" snow throwers. DI 14 Ex. A. Nevertheless, we conclude that information contained in the recall notice may be considered here.
   Mr. Liebig's complaint alleges that defendants failed "to realize the snow thrower was the subject of a recall, but nonetheless facilitate[ed] in its distribution." DI 1, Ex. A ¶ 14. It also refers to the snow thrower as "highly dangerous, highly defective" and notes it "contained a lateral (hidden) defect" that caused the rims to burst. *Id.* ¶ 9. (Mr. Liebig even attaches the recall notice as an exhibit to his response in opposition to the motion to dismiss. DI 13 Ex. B.) In that way, the recall notice is "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d at 1426. It was also attached to MTD's reply brief in support of its motion to dismiss. DI 14 Ex. A. It is therefore an "undisputedly authentic document" that defendant attached as an exhibit to its motion. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196. *See also Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (holding that the court could consider an essay attached to a reply brief, in part, because the court held a hearing that allowed explanation of the letter). Similarly, we held an oral argument on MTD's motion to dismiss on April 18, 2023, and no one called the recall notice into question.

3

II.   **MTD's Motion to Dismiss**

Mr. Liebig sued MTD Products Inc and MTD LLC (collectively, "MTD")[4] for negligence, strict liability, and breach of express and/or implied warranties.  DI 1 Ex. A.  Relevant to MTD's motion to dismiss, Mr. Liebig asserts that MTD was negligent for: (1) "failure to notify [him] of the defective and/or unsafe operating condition of the snow thrower"; (2) "failure to remove the negligently and defectively designed, manufactured, assembled, and maintained snow thrower from the stream of commerce, especially after you realized or should have realized its dangerous and hazardous propensities"; and (3) "failure to issue post-sale warnings."  DI 7-1 at 3; DI 1 Ex. A ¶ 14.  He also asserts MTD is strictly liable for failure "to provide post-sale warnings."  DI Ex. A ¶ 25.  Further, Mr. Liebig's strict liability and breach of warranty claims incorporate the preceding allegations by reference.  *Id.* ¶¶ 20, 26.

MTD moves to dismiss any claims related to "'post-sale' acts or omissions" to the extent that Mr. Liebig seeks to bring these claims under negligence, strict liability, or breach of warranty.  DI 7-1 at 1-2.  MTD argues that Mr. Liebig's complaint asserts two post-sale duties.  *Id.* at 4.  First, MTD says that Mr. Liebig would impose "a perpetual duty to locate and recall" the snow throwers to prevent their sale to consumers.  *Id.* at 4-5.  Second, MTD says that Mr. Liebig would impose a requirement to "identify the consumer and warn him" of a defect in the product.  *Id*.  MTD argues that Pennsylvania courts have "long dismissed" claims under the first

---

[4] The original complaint listed a number of defendants, including Yard Machines by MTD, MTD, LLC, MTD Products, Inc., Roosevelt Mall Flea Market, The Roosevelt Mall Outdoor Flea Market, Philadelphia Flea Markets, John/Jane Doe (1-10), ABC Corporation (1-10), and DEF Company (1-10).  DI 1 Ex. A.  In the notice of removal, defendants state that some of the original defendants were identified incorrectly or are not extant legal entities.  DI 1.  The proper defendants were MTD Products Inc, MTD LLC, and Phila Flea Markets, LLC.  DI 1 ¶ 3-6. Plaintiffs do not appear to dispute this.  *See* DI 13.  We later dismissed Phila Flea Markets, LLC from the case.  DI 27.

asserted duty to recall or retrofit products. *Id.* at 5. MTD further argues that the post-sale duty to warn has been imposed only in "limited and atypical circumstances" that are not present in this case. *Id.* at 6.

Mr. Liebig's response is silent as to the first duty to recall or retrofit products. *See* DI 13. In response to the second asserted duty, Mr. Liebig argues that Pennsylvania law[5] imposes a post-sale duty to warn under certain circumstances. *Id.* at 4. In particular, a post-sale duty to warn would apply if MTD had "subsequent, undisputed knowledge of the defect," which Mr. Liebig claims it did. *Id.* In these instances, Mr. Liebig argues, whether or not MTD has a post-sale duty to warn is a "highly factual" and therefore should not be decided before discovery. *Id.* at 5.

For reasons set forth below, we disagree and grant MTD's motion to dismiss. We also grant Mr. Liebig leave to amend his complaint to the extent he can show the snow thrower is the kind of unique product that may impose a post-sale duty to warn on MTD, consistent with this ruling.

### III. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). At the motion to dismiss stage, a court must "accept all factual allegations in the

---

[5] As a federal court with diversity jurisdiction, we must apply substantive Pennsylvania law. *See Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010).

complaint as true and view them in the light most favorable to the plaintiff." *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

Evaluating a motion to dismiss for failure to state a claim for relief involves a "three-step process." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)). "The first step in that process requires an articulation of the elements of the claim." *Id.* The second step involves "disregarding any 'formulaic recitation of the elements of a . . . claim or other legal conclusion,'" *id.* (quoting *Connelly*, 809 F.3d at 789), and allegations that are "so threadbare or speculative that they fail to cross the line between conclusory and the factual," *id.* at 328 (quoting *Connelly*, 809 F.3d at 790). The third step involves taking the remaining allegations and "assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in their plaintiff's favor." *Id.* (citing *Connelly*, 809 F.3d at 787, 790).

## IV. Analysis

The central question[6] is whether MTD had a post-sale duty to warn about the snow thrower's alleged danger. For the source of this duty, Mr. Liebig relies on *Walton v. Avco Corp.*, 610 A.2d 454 (Pa. 1992). In *Walton*, a helicopter manufacturer[7] learned of a defect in an engine

---

[6] One preliminary: MTD correctly notes that Pennsylvania law does not recognize a duty to recall or retrofit products. *See e.g.*, *Habecker v. Copperloy Corp.*, 893 F.2d 49, 53-54 (3d Cir. 1990); *Padilla v. Black & Decker Corp.*, Civ. A. 04-CV-4466, 2005 WL 697479, at *7 (E.D. Pa. Mar. 24, 2005); *Boyer v. Case Corp.*, No. 97-4540, 1998 WL 205695, at *2 (E.D. Pa. Apr. 28, 1998). Thus, to the extent Mr. Liebig is asserting such post-sale duties, these claims cannot be sustained under Pennsylvania law. Indeed, Mr. Liebig does not discuss the duty to recall or retrofit in his response to MTD's motion to dismiss. DI 13.

[7] The entity referenced here, Hughes Helicopter, Inc., manufactured and sold the helicopter. *Walton*, 610 A.2d at 571.

that it had incorporated into one of its helicopters. *Id.* at 571-72. But the helicopter manufacturer failed to share this information with either the helicopter's service center or owner. *Id.* at 571, 573. The helicopter crashed, killing two people. *Id.* at 571-73. The Pennsylvania Supreme Court held the helicopter manufacturer had an independent duty to warn[8] its service centers and those who purchased the helicopters about the defective engine. *Id.* at 575-78. This duty stemmed from its "subsequent, undisputed knowledge of the defect."[9] *Id.* at 577. However, the court was careful to ground its ruling in the unusual circumstances of the case:

> As the Superior Court pointed out, the peculiarities of the industry also go far to support this imposition of responsibility. Helicopters are not "ordinary goods." By their nature they are not the types of objects that could get swept away in the currents of commerce, becoming impossible to track or difficult to locate. Helicopters are not mass-produced or mass-marketed products; to the contrary, they are sold in a small and distinct market. Additionally, establishments that service helicopters are convenient and logical points of contact. Even more important, in this case, the manufacturer of the crucial component part remained in contact with Hughes for the very purpose of keeping Hughes current on all pertinent information.

---

[8] The *Walton* court analyzed the post-sale duty to warn under only a theory of strict liability. 610 A.2d at 573-78. But later cases that include claims for negligence, strict liability, and breach of warranty, analyzed the issue of a post-sale duty to warn based on the logic outlined in *Walton*. *See Padilla*, 2005 WL 697479, at *1, 5-7; *Boyer*, 1998 WL 205695, at *1-2. We will apply the *Walton* framework here, both because it makes sense and because it is the theory that Mr. Liebig has advanced.

[9] Courts have recognized that there must be a defect in the product when sold and that a post-sale duty to warn does not arise from subsequent improvements in technology. *See Lynch v. McStome and Lincoln Plaza Assocs.*, 548 A.2d 1276, 1281 (Pa. Super. Ct. 1988) (declining to impose a post-sale duty in negligence to "monitor changes in technology and notions of safety" and notify purchasers when the product is "free from all defects when sold"); *DeSantis v. Frick Co.*, 745 A.2d 624, 631 (Pa. Super. Ct. 1999) (declining to adopt a tort liability standard that would no longer require evidence of a defect at the time of the sale). However, Mr. Liebig alleges here that the snow throwers were defective "as designed and sold." DI 1 Ex. A ¶ 24. Taking this allegation as true, which we must, Mr. Liebig has adequately alleged that the product was defective at the time of sale.

*Id.* at 459.

Courts have recognized the limited scope of *Walton*. For example, in *Boyer*, the court granted a motion to dismiss a post-sale duty to warn claim against the manufacturer of a Uniloader (a type of skid-steer loader), noting that "Walton was limited of the particular facts of the case before the court." 1998 WL 205695, at *1-2. Similarly, in *Habecker v. Clark Equip. Co.*, 797 F. Supp. 381, 388 (M.D. Pa. 1992), the court noted that forklifts are "common business appliances" and therefore did not fit within the scope of *Walton*. *But see Padilla*, 2005 WL 697479, at *1, 6-7 (allowing a claim in a motion for summary judgment, filed while discovery was ongoing, to proceed on a theory that a manufacturer failed to issue a post-sale duty to warn of an allegedly defective saw and work bench).

The snow thrower at issue here is not the kind of product that could come with a post-sale duty to warn under *Walton*, i.e., one that is sold in limited number into a distinct market that facilitates traceability. Unlike the helicopter in *Walton*, a snow thrower is an "ordinary" product that can be found in many households — apparently as many as 130,000. *Walton*, 610 A.2d at 459; DI 14 Ex. A. *Walton* specifically distinguished helicopters from this kind of "mass-produced or mass-marketed" product. 610 A.2d at 459.

Further, this particular snow thrower's path to Mr. Liebig illustrates the inherent problems with imposing a duty on MTD to locate and warn downstream owners of snow throwers. Mr. Liebig alleges he received the snow thrower as a gift from his father, who first purchased it from an unnamed individual at a flea market. DI Ex. A. ¶¶ 7-9. And how the snow thrower went from MTD's control to the unknown seller at the flea market is a mystery. This is precisely the kind of product that gets "swept away in the currents of commerce, becoming impossible to track or difficult to locate." *Id.* Further, unlike the service centers in *Walton*, there

8

were no "convenient and local points of contact" that would have allowed MTD to warn consumers about the snow thrower.[10]

*Walton* therefore expressly distinguished itself from the circumstances presented here. We agree with the courts in *Boyer* and *Habecker* that *Walton* should be read narrowly and note that a snow thrower is even more like an "ordinary" good than a Uniloader or forklift.

We will, however, grant Mr. Liebig leave to amend his complaint. Leave to amend should be given "freely" when "justice so requires." Fed. R. Civ. P. 15(a)(2). If the facts allow, Mr. Liebig may amend his complaint to plausibly allege that the snow thrower is the kind of product that would require MTD to issue post-sale warnings, bearing in mind the limited circumstances under which Pennsylvania law imposes that post-sale duty.

## V.     Conclusion

For the above reasons, we grant MTD's motion to dismiss claims based on post-sale duties. We also grant Mr. Liebig leave to amend his complaint within fourteen days.

---

[10] Strict liability requires that a product is sold in a defective condition and that the defect is the proximate cause of the plaintiff's injuries. *Walton*, 610 A.2d at 458. Mr. Liebig is alleging that the product was defective in the same way the helicopter in *Walton* was: it lacked the adequate warnings regarding the dangerousness of the product. *Id.* Thus, Mr. Liebig would have to show that this defect, namely the lack of warnings, was the proximate cause of his injuries. Even if MTD had some duty to warn an entity earlier in the chain of distribution (and we are not saying it did) there are no allegations that this failure was the proximate cause of Mr. Liebig's injuries when he received the snow thrower second-hand from his father (who purchased it at a flea market).